Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000637
07-OCT-2019
09:09 AM

NO. CAAP-17-0000637

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


GAIL ANN KOSIOREK, Individually and as Trustee,
Plaintiff-Appellee, v. GRAEME DONALD MANKELOW,
Individually and as Trustee, and LINDA MAE HENRIQUES,
Defendants-Appellants, and JOHN DOES 1-10,
JANE DOES 1-10, and DOE ENTITIES 1-10, Defendants,
and
GRAEME DONALD MANKELOW, Counterclaim Plaintiff-Appellant,
v. GARY GRIMMER and GAIL ANN KOSIOREK,
Counterclaim Defendants-Appellees, and JOHN DOE 1-10,
JANE DOES 1-10, and DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-0152-01 ECN)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Defendant/Counterclaim-Plaintiff/Third-Party

Plaintiff/Appellant Graeme Donald Mankelow, individually and as

Trustee (**Mankelow**), and Defendant/Appellant Linda Mae Henriques

(**Henriques**) appeal from the Amended Rule 54(b) Final Judgment,

filed on August 29, 2017 (**Amended Judgment**), by the Circuit Court

of the First Circuit (**Circuit Court**),[1] in favor of

---

[1]     The Honorable Dean E. Ochiai entered the Amended Judgment; the
Honorable Edwin C. Nacino presided over the earlier proceedings referenced
herein.

Plaintiff/Counterclaim-Defendant/Appellee Gail Ann Kosiorek, individually and as Trustee (**Kosiorek**). Mankelow and Henriques (collectively, **Defendants**) also challenge the Circuit Court's (1) Order Granting Plaintiff's Motion for Partial Summary Judgment on Supplemental Complaint and for Entry of Rule 54(b) Final Judgment, filed on January 4, 2017 (**Order Granting Partial Summary Judgment**) and (2) Order Denying Defendants' Motion to Extend Time for Filing Additional Declaration Based on Newly Obtained Evidence in Support of [Defendants'] Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment on Supplemental Complaint and for Entry of Rule 56(b) Final Judgment, filed on October 26, 2016 (**Order Denying Motion to Extend Time**).

This dispute arises out of a conflict between Mankelow and Kosiorek, former spouses, over a lot adjacent to their former home, which is now owned by Kosiorek. Both parties claim that they have acquired title to the adjacent lot by separate conveyances executed by the same individual, Darrell W. Mattos (**Mattos**). The Circuit Court granted partial summary judgment to Kosiorek and ruled, *inter alia*, that Kosiorek acquired title from Mattos. We vacate and remand.

I.    BACKGROUND

A.    The Conveyances

On December 9, 1981, Darrell W. Mattos & Associates, Inc. (the **Corporation**) received title to a five-acre parcel of land (the **Property**); the conveyance was recorded in the State of Hawai'i, Bureau of Conveyances. The stated purpose of the

Corporation was to acquire, develop, and subdivide the Property, and sell the lots.

At some point in 1989, after five lots were sold, the Corporation ceased all operations; all creditors were paid and all assets were informally taken over by Mattos.  Mattos knew that a remnant, nonconforming, un-buildable lot (**Lot 6**) remained, and he believed that the City & County of Honolulu (**Honolulu**) had taken control of it.  Neither Mattos nor the Corporation were ever assessed or paid real property taxes for Lot 6 after the completion of the project.  On November 16, 1998, the Corporation was involuntarily dissolved by the State of Hawai'i, Department of Commerce and Consumer Affairs (**DCCA**), pursuant to Hawaii Revised Statutes (**HRS**) § 415-95 (1993 & Supp. 1998).[2]

---

[2]     HRS § 415-95 states, in relevant part:

> **§ 415-95 Involuntary; ordered by director and certificates, notices; reinstatement.** (a) Whenever the director certifies the name of a corporation as having given any cause for dissolution pursuant to section 415-94, the director may declare the corporation dissolved.  Before the director may declare a corporation dissolved, the director shall:
>
> (1)     Give notice of the ground or grounds for dissolution as provided in section 415-94, by mailing the notice to the corporation at its last known address appearing in the records of the director; and
>
> (2)     Give statewide public notice of the intention to dissolve the corporation once in each of three successive weeks.
>
> (b) Parties of interest may petition a court of competent jurisdiction to appoint a trustee to settle the affairs of any corporation so dissolved. If a trustee is appointed, the trustee shall pay to the State out of any funds that may come into the trustee's hands as trustee, a sum equal to any penalty imposed under section 415-135. If a trustee is not appointed by a court of competent jurisdiction, the last directors of the dissolved corporation shall be and act as trustees for the creditors and shareholders of the dissolved corporation with full powers to settle its affairs.

3

Henriques contacted Mattos in the late summer of 2015 regarding Lot 6, as she had conducted research and found that the Corporation was still the owner of record. She claimed she lived nearby and had taken care of Lot 6, and she sought to acquire a quitclaim deed for the lot. In return for a payment of $1,000, deposited into Mattos's personal bank account, Mattos executed a quitclaim deed (**Henriques Quitclaim Deed**) in favor of Henriques for Lot 6, which was recorded in the Bureau of Conveyances on September 21, 2015. The Henriques Quitclaim Deed stated that the Corporation was the Grantor. Nothing in the Henriques Quitclaim Deed indicates that the Corporation was dissolved or that Mattos was acting in any capacity other than in his personal capacity. Two days later, on September 23, 2015, a further conveyance of Lot 6 was recorded in the Bureau of Conveyances, *i.e.*, a quitclaim deed from Henriques to Mankelow (**Mankelow Quitclaim Deed**).

Mattos was later contacted by Kosiorek's counsel who told Mattos that Kosiorek wished to buy Lot 6. At his deposition, Mattos testified that he relied on Kosiorek's counsel's evaluation that to effectively convey Lot 6, a deed would have to be made by Mattos personally and not by the Corporation. Mattos agreed and executed a deed listing himself as the grantor and Kosiorek as the grantee (**Kosiorek Deed**).[3] On February 17, 2016, the Kosiorek Deed was recorded in the Bureau of Conveyances.

---

[3] The Kosiorek Deed is labeled as a "Deed" and not specifically as either a warranty or quitclaim deed. However, the deed makes no warranties of title.

B.    The Relevant Litigation

On April 27, 2016, Kosiorek filed a Supplemental Complaint against the Defendants, seeking to quiet title to Lot 6.[4] The Supplemental Complaint averred that the conveyance to Henriques, by way of the Henriques Quitclaim Deed, was invalid as a matter of law and unenforceable. Therefore, the Mankelow Quitclaim Deed was also without legal effect, but the conveyance to Kosiorek in the Kosiorek Deed effectively transferred title to Lot 6 to her.

On June 17, 2016, Kosiorek filed Plaintiff's Motion for Partial Summary Judgment on Supplemental Complaint and for Entry of Rule 54(b) Final Judgment (**MPSJ**). Kosiorek argued that upon the dissolution of the Corporation, the assets of the Corporation, including Lot 6, vested in and belonged to Mattos as its sole shareholder. Therefore, Kosiorek argued, the Kosiorek Deed transferred title to Lot 6 to Kosiorek, as Mattos, as an individual, held title to the lot and was the proper grantor. Kosiorek argued that the Henriques Quitclaim Deed was not effective to convey any interest in Lot 6 because the grantor, the Corporation, was administratively dissolved in 1998, and ceased to exist. Therefore, the Corporation could not have taken

---

[4] Kosiorek's original Complaint against the Defendants asserted breach of warranty deed, slander of title, adverse possession, and harassment, stalking and invasion of privacy. The Complaint alleged that she acquired title to Lot 6 by adverse possession, and that Mankelow was claiming to have purchased the parcel. She also alleged that Mankelow was using Lot 6 to invade her privacy and harass her. Mankelow filed a counterclaim against Kosiorek for trespass, conversion, and theft, and filed a third-party complaint against Kosiorek's attorney, asserting similar claims. These claims are not at issue in this appeal, as this appeal only concerns the partial summary judgment in favor of Kosiorek on her Supplemental Complaint to quiet title to Lot 6.

any action to convey Lot 6, and the conveyances to Henriques and Mankelow were not effective to convey any interest in Lot 6.

In opposition to the MPSJ, Defendants argued, *inter alia*, that Mattos became a statutory trustee at the time of the Corporation's dissolution and that he had the power as trustee to convey the dissolved Corporation's property in its own name. Defendants also requested additional time to conduct discovery under the Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(f). The hearing on the MPSJ was held on July 19, 2016. The Circuit Court took the matter under advisement and granted Defendants' request to conduct additional discovery, specifically, to depose Mattos. On October 20, 2016, Mattos responded to a subpoena and was deposed by the parties. Defendants thereafter filed submissions of facts discovered from Mattos's deposition for the court to consider with respect to summary judgment, and Kosiorek responded thereto.

On July 25, 2016, after the hearing on the MPSJ was completed, but during the interim period granted by the court to allow Defendants to depose Mattos, Defendants filed a Motion to Extend Time for Filing Additional Declaration Based on Newly Obtained Evidence in Support of [Defendants'] Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment on Supplemental Complaint and for Entry of Rule 56(b) Final Judgment, filed June 17, 2016 (**Motion to Extend Time**). In the Motion to Extend Time, Defendants requested additional time (after the hearing on the MPSJ) to submit a declaration from Mankelow, in which he alleged that on July 20, 2016, he received

6

a real property tax bill from Honolulu. Attached to the Motion to Extend Time was the proposed declaration and the tax bill. The court entered an Order Denying Motion to Extend Time on October 26, 2016.

On January 4, 2017, the Circuit Court entered the Order Granting Partial Summary Judgment. On August 29, 2017, the Circuit Court entered an Amended Judgment under HRCP Rule 54(b).[5] The Amended Judgment states that upon the involuntary dissolution of the Corporation, its assets, including Lot 6, "vested in and belonged to its sole shareholder, [Mattos]." It further states that Kosiorek acquired title to Lot 6 when Mattos individually conveyed Lot 6 by the Kosiorek Deed and that the Henriques Quitclaim Deed and Mankelow Quitclaim Deed were not effective to convey any interest in Lot 6. The Circuit Court certified there was no just reason for delay under HRCP Rule 54(b).[6]

---

[5]     The Circuit Court first entered judgment on January 4, 2017, which was appealed. This court found, however, that the judgment was not properly certified under HRCP Rule 54(b) and, therefore, the court did not have appellate jurisdiction. See Kosiorek v. Mankelow, No. CAAP-17-0000019, 2017 WL 2829543 (Haw. App. June 30, 2017) (Order). The Circuit Court subsequently entered the Amended Judgment, appropriately certified under HRCP Rule 54(b).

[6]     HRCP Rule 54(b) states:

> **(b) Judgment upon multiple claims or involving multiple parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Defendants timely filed a notice of appeal.

II. POINTS OF ERROR

Defendants raise two points of error on appeal, contending that the Circuit Court erred in: (1) granting Kosiorek's MPSJ, based on numerous alleged flaws in the court's conclusions; and (2) denying their Motion to Extend Time.

III. APPLICABLE STANDARDS OF REVIEW

An appellate court reviews an award of summary judgment de novo. Fujimoto v. Au, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001) (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22). The Hawai'i Supreme Court has articulated the standard as follows:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Id. (citations omitted). We must review the evidence in the light most favorable to the party opposing the motion for summary judgment. Id. at 137, 19 P.3d at 720 (citing State ex rel. Bronster v. Yoshina, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) and Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

Questions of statutory interpretation are questions of law reviewed de novo.

> In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:
> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the

> legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011) (citations and quotation marks omitted).

We review the Circuit Court's ruling on the Motion to Extend Time for an abuse of discretion. "A court abuses its discretion if it 'clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'" AC v. AC, 134 Hawai'i 221, 229, 339 P.3d 719, 727 (2014) (citation and brackets omitted).

IV. DISCUSSION

A. Partial Summary Judgment in Favor of Kosiorek

Defendants argue that the Circuit Court erred in granting Kosiorek's MPSJ because the court erred by concluding that title to the real property of a dissolved corporation "automatically springs" from the name of the corporation to the shareholder or shareholders upon dissolution, even though (i) a corporation might have multiple shareholders; (ii) State law does not require the public disclosure of shareholders such that anyone examining recorded title at the Bureau of Conveyances could not determine who is the legitimate title holder, and (iii) a shareholder does not become the record owner in the Bureau of Conveyances upon dissolution. Thus, the central question before this court is by what means title to real property, recorded in

9

the Bureau of Conveyances as the property of a corporation, can be conveyed to a purchaser after the corporation is dissolved.

"At common law, in the absence of statute, when a corporation was effectively dissolved its existence as a legal entity ceased. Dissolution terminated its power to sue or be sued in its corporate name, and extinguished all debts due to or from it." In re Ellis, 53 Haw. 23, 26, 487 P.2d 286, 288 (1971) (citation omitted) (**Ellis**). With respect to real property, the common law rule was harsh and provided that "the real property of a dissolved corporation reverted to the grantors and donors or their heirs." 16A William Meade Fletcher & Carol A. Jones, Fletcher Cyclopedia of the Law of Corporations § 8134, at 285 (rev. vol. 2012) (**Fletcher**).[7]

As the supreme court explained in Ellis, to abrogate these harsh common law rules, statutes have been enacted in most jurisdictions with respect to the legal status of dissolved corporations and the disposition of its property. See Ellis, 53 Haw. at 27 n.4, 487 P.2d at 288 n.4 (citing 16A W. Fletcher, Cyclopedia of Corporations § 8143, at 316 (rev. vol. 1962)).

---

[7] Fletcher explains:

> Courts have avoided the harshness of common law rules [by which real property of a dissolved corporation reverted back to grantors or donors or their heirs] by resorting to principles of equity and holding that title to the property of a dissolved corporation vests in the shareholders subject to the claims of creditors. Some states have abandoned both common law and equity rules governing dissolution by providing that dissolution does not transfer title to the corporation's property.
>
> A dissolved corporation in the process of winding up and liquidating its business and affairs is entitled to . . . transfer or convey property[.]

Fletcher, § 8134, at 285-89 (footnotes omitted).

10

Although the statutes take various forms, they are all "remedial in purpose." Id.

It is undisputed that the Corporation was involuntarily dissolved by the DCCA on November 16, 1998, under HRS § 415-95. Chapter 415 was repealed and replaced by Chapter 414 as of July 1, 2001, but the savings provision of Chapter 414 explicitly provides that the repeal of HRS § 415-95 by Chapter 414 "does not affect . . . [a]ny . . . dissolution commenced under the statute before its repeal" and the "dissolution may be completed in accordance with the statute as if it had not been repealed." HRS § 414-483(a)(4) (2004).[8] Therefore, Chapter 415, in effect at the time of the dissolution of the Corporation, governs our analysis.

The version of HRS § 415-95 applicable at the time of the Corporation's dissolution in 1998 provided, in relevant part:

---

[8] HRS § 414-483 states:

§ 414-483 Savings provision. (a) Except as provided in subsection (b), the repeal of a statute by this chapter does not affect:
(1) The operation of the statute or any action taken under it before its repeal;
(2) Any ratification, right, remedy, privilege, obligation, or liability acquired, accrued, or incurred under the statute before its repeal;
(3) Any violation of the statute, or any penalty, forfeiture, or punishment incurred because of the violation, before its repeal;
(4) Any proceeding, reorganization, or dissolution commenced under the statute before its repeal, and the proceeding, reorganization, or dissolution may be completed in accordance with the statute as if it had not been repealed.
(b) If a penalty or punishment imposed for violation of a statute repealed by this chapter is reduced by this chapter, the penalty or punishment if not already imposed shall be imposed in accordance with this chapter.
(c) Nothing in this chapter shall affect the validity of any action taken by any corporation, or shall impair or affect the validity of any provision of the articles of incorporation or bylaws adopted by any corporation, prior to July 1, 2001.

> If a trustee is not appointed by a court of competent jurisdiction, the last directors of the dissolved corporation shall be and act as trustees for the creditors and shareholders of the dissolved corporation with full powers to settle its affairs.

HRS § 415-95(b). There is no Hawai'i case law addressing the questions raised here under HRS § 415-95. However, case law addressing its predecessor statute, which also utilized a trustee structure, provides guidance.

At the time of the supreme court's decision in Ellis, the applicable statutes governing involuntary dissolution of a corporation were HRS §§ 416-123[9] and 416-124 (1976).[10] Pursuant to those statutes, "when a corporation is involuntarily dissolved, its directors automatically become the liquidating trustees for its creditors and stockholders until some other persons are appointed, and as trustees they become the owners of all corporate assets." Sam Daily Realty, Inc. v. W. Pac. Corp.,

---

[9]  HRS § 416-123 stated, in relevant part:

§ 416-123 Proceedings after dissolution; appointment of trustees. . . .
Upon the involuntary dissolution of any corporation and unless and until some other person or persons are appointed by the director of regulatory agencies or a court of competent jurisdiction, the directors of any corporation organized for profit . . . shall be and act as trustees for the creditors and stockholders or members of the corporation with full powers to settle its affairs[.]

[10]  HRS § 416-124 stated, in relevant part:

§ 416-124 Trustee; powers, liabilities, duties. The title to all assets and property, real, personal, and mixed, belonging to the corporation shall, immediately upon the dissolution thereof, unless by decree of court of competent jurisdiction it is otherwise ordered, vest in the trustee or trustees for the creditors and stockholders or members of the corporation dissolved.
Under the name of the trustee or trustees of the corporation dissolved . . . the trustee or trustees shall have power . . . to have, hold, reserve, sell, and dispose of property, real, personal, and mixed; . . . to proceed as speedily as practical to a complete winding up of the corporation and, to that end, to exercise all powers of the dissolved corporation.

4 Haw. App. 577, 579, 671 P.2d 450, 452 (1983) (citation omitted). HRS § 416-124 provided that upon the dissolution of the corporation, title to all property, including real property, immediately vests in the trustee or trustees,[11] who had the power to dispose of the property and to exercise all the powers of the dissolved corporation.

Under HRS § 416-123, "the directors of the corporation are designated trustees and become the automatic successors of the dissolved corporation." Makaneole v. Pac. Ins. Co., 77 Hawai'i 417, 421, 886 P.2d 754, 758 (1994) (citing HRS §§ 416-123 and -124 (1985)). Pursuant to that scheme, this court held that "the director of a corporation, even if not properly designated a trustee after the corporation's dissolution, is a trustee and has standing to sue on its behalf" as "the former directors became statutory trustees who succeeded to the interest of the corporation by operation of law." Id. (citing Cane City Builders, Inc. v. City Bank of Honolulu, 50 Haw. 472, 443 P.2d 145 (1968) (interpreting HRS §§ 172-132 and -133 (1955), which was essentially identical to HRS §§ 416-123 and -124). Thereafter, relying on Cane City Builders, this court held in Sam Daily Realty, that if a trustee of a dissolved corporation may sue in the name of the dissolved corporation pursuant to HRS § 416-124, it can also be sued in the same name. 4 Haw. App. at 580-81, 671 P.2d at 452. The court explained that "[t]he trustee

---

[11]    As explained in Ellis, the more appropriate term is "statutory liquidator" but because the statutes generally refer to the former director as a "trustee," we will use the terms interchangeably. See 53 Haw. at 28, 487 P.2d at 289; see also Fletcher, § 8175, at 390-93.

13

is the <u>automatic successor</u> of the dissolved corporation" and continues its corporate existence in the name of the trustee, that is, "[t]he dissolved corporation's name is the trustee's pseudonym." <u>Id.</u> at 580, 671 P.2d at 452 (emphasis added); <u>see also</u> <u>Makaneole</u>, 77 Hawai'i at 422, 886 P.2d at 759 (citing <u>Sam Daily Realty</u> and holding that substitution of parties was unnecessary following dissolution of a corporation because its corporate existence continued in the automatically designated trustees).

Chapter 416 was repealed and replaced by Chapter 415 in 1983. The purpose of that legislation was to "replace existing state statutes which regulate the operation of profit corporations with an amended version of the Model Business Corporation Act." H. Stand. Comm. Rep. No. 703, in 1983 House Journal, at 1163; <u>see also</u> S. Stand. Comm. Rep. No. 406, in 1983 Senate Journal, at 1212 ("The purpose of this Act was to unify and update the law of profit corporations in the State and to bring it into conformity with the Model Business Corporation Act.") The revised statute under Chapter 415 also provided that the former directors of a dissolved corporation became trustees upon dissolution. Thus, the applicable statute in this case, HRS § 415-95, and its predecessor statutes, HRS §§ 416-123 and 416-124, both utilized a structure whereby former directors of a corporation become trustees for the dissolved corporation,

sometimes referred to as the "trust fund theory." See Ellis, 53 Haw. at 27, 487 P.2d at 289.[12]

HRS § 415-95(b) generally provides that the trustee shall act "with full powers to settle [the dissolved corporation's] affairs." Fletcher describes the general rules as follows:

> Under a statute making the directors or other officers of a corporation, on its dissolution, trustees for creditors and shareholders for the purpose of settling its affairs, the property rights of a corporation survive its dissolution. . . .
> In most jurisdictions, with some exceptions, it is well settled that these statutory trustees are vested with title to the corporation's assets. . . . The term "title" in a statute vesting title to the corporate assets in the former director-trustees for the creditors and shareholders of the dissolved corporation has been construed to mean the right of possession, since the property of a dissolved corporation actually belongs to those persons who were shareholders at the time of its dissolution.

Fletcher, § 8175, at 391-92 (emphasis added; footnotes omitted); see also Ellis, 53 Haw. at 27-28, 487 P.2d at 289. Title to real property vests in the statutory trustees upon dissolution, who may subsequently convey the property to wind up the affairs of the business. Fletcher, § 8134, at 285-89. Fletcher also notes that when trustees do act on behalf of a dissolved corporation, "[a]s a general rule, all of the trustees must join in an act or one trustee must act as the agent of the others." Id., § 8181, at 410; see also Rice v. Hill City Stock Yards Co., 826 P.2d 1288, 1291 (Idaho 1992) (deed a nullity where trustee acted unilaterally); Camden v. Dodds Truck Line, Inc., 404 S.W.2d 233,

---

[12] The statute currently in effect, HRS § 414-385(b)(1) (2004), expressly provides that the "[d]issolution of a corporation does not . . . [t]ransfer title to the corporation's property." The dissolved corporation "continues its corporate existence" but only so that it may "wind up and liquidate its business and affairs." Id. at § 414-385(a). The earlier statutes do not contain similar language.

237 (Mo. Ct. App. 1966) (statutory trustees should act as a group and not individually, and should transact business as trustees and not in the name of the corporation).

Based on the powers granted in HRS § 415-95, and consistent with the aforementioned authorities, we conclude that the trustees of the Corporation were vested with title to the Corporation's assets upon its dissolution.[13]

Defendants recognize that upon dissolution the directors serve as trustees in dissolution, but they maintain that we should nevertheless conclude that title does not transfer upon dissolution to either the shareholders or statutory trustees, but should remain with the dissolved Corporation. Defendants point to the current corporate dissolution statute, HRS § 414-385(b)(1) (2004)[14] and the Model Business Corporation

---

[13] We note that Missouri utilized the same trust fund theory for dissolved corporations. Missouri's RSMo. § 351.525 (1986) provided that "[t]he statutory trustees succeed to the interest of the corporation by operation of law." SAB Harmon Indus., Inc. v. All State Bldg. Sys., Inc., 733 S.W.2d 476, 483 (Mo. Ct. App. 1987). When confronted with the issue of who has the power to convey title, Missouri courts have held that the dissolution of a corporation terminates its corporate existence and the dissolved corporation has no power to convey property in its corporate name and capacity. See Land Clearance for Redevelopment Auth. of St. Louis v. Zitko, 386 S.W.2d 69, 81 (Mo. 1964) (en banc) ("[I]t is well-recognized that a corporation whose charter has been forfeited has no legal existence and a deed executed by a defunct corporation is not effective to convey title to real estate."); New Hampshire Fire Ins. Co. v. Virgil & Frank's Locker Serv. Inc., 302 F.2d 780, 782-83 (8th Cir. 1962) ("It is elementary that purported acts of a nonentity are without legal effect and that a corporation deed, executed while the corporation has no legal existence, is a worthless thing."). Thus, under Missouri law, the trustees, not the corporation or its shareholders, have the power to convey corporate property upon dissolution.

[14] HRS § 414-385 states:

§ 414-385 Effect of dissolution. (a) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
(1) Collecting its assets;
(2) Disposing of its properties that will not be distributed in kind to its shareholders;

(continued...)

Act § 14.05(b). HRS § 414-385(b)(1) indeed reflects the new rule found in the Model Business Corporation Act that provides that title does not transfer upon dissolution. However, as explained above, HRS § 415-95 remains applicable in this case.

Turning to the conveyance documents at issue, the Henriques Quitclaim Deed identifies the Corporation as the grantor and is signed by Mattos without any indication that he is operating in any capacity other than his personal capacity. When asked about this in his deposition, he responded that he did not know in what capacity he was signing. However, the Corporation's property rights in Lot 6 vested in its former directors, as trustees of the Corporation, upon dissolution. Accordingly, the Corporation itself could not effectively transfer title to Henriques.

---

[14](...continued)

(3) Discharging or making provision for discharging its liabilities;
(4) Distributing its remaining property among its shareholders according to their interests; and
(5) Doing every other act necessary to wind up and liquidate its business and affairs.
(b) Dissolution of a corporation does not:
(1) Transfer title to the corporation's property;
(2) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;
(3) Subject its directors or officers to standards of conduct different from those prescribed in part IX;
(4) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;
(5) Prevent commencement of a proceeding by or against the corporation in its corporate name;
(6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
(7) Terminate the authority of the registered agent of the corporation.

The Kosiorek Deed purported to transfer the rights that Mattos had to Lot 6 to Kosiorek. Mattos was listed as the grantor and again signed only his name. No reference to the dissolved Corporation is made; nor is there any indication that he was acting in the capacity of a trustee. In his deposition, Mattos explained that he believed that he was acting in his personal capacity. Again, the title to the property vested in the statutory trustees upon dissolution of the Corporation and therefore did not vest in Mattos in his personal capacity.

It further appears that both deeds suffered from an additional defect precluding summary judgment. Mattos averred, in his declaration and in his deposition testimony, that he was the sole incorporator and shareholder of the Corporation, and that upon dissolution of the Corporation no trustee was appointed. In his deposition, Mattos also claimed he was the sole director of the Corporation. However, in their memorandum in opposition to the MPSJ, Defendants included the Corporation's record from the DCCA's business registration online database (**DCCA Record**) and asked the Circuit Court to take judicial notice of the DCCA Record, which reports that there were two directors at the time of the Corporation's dissolution.[15] On appeal, the Defendants request that this court also take judicial notice of the DCCA Record.

---

[15] See Business Registration Division, Department of Commerce & Consumer Affairs, https://hbe.ehawaii.gov/documents/business.html?fileNumber=48994D1 (last visited September 13, 2019).

The DCCA is an executive agency of the State of public Hawai'i. See HRS § 26-4(5) (2009).[16] As such, its records are records and open to inspection. See HRS § 92F-3 (2012)[17] ("'Government record' means information maintained by an agency in written, auditory, visual, electronic, or other physical form."); HRS § 92F-11(a) (2012) ("All government records are open to public inspection unless access is restricted or closed by law.").[18] The DCCA Record, as a public record, is generally one that could be accepted through judicial notice. See Williams v. Aona, 121 Hawai'i 1, 11 n.6, 210 P.3d 501, 511 n.6 (2009) (taking judicial notice of a public record that is easily verifiable); Hawai'i Rules of Evidence (**HRE**) Rule 201.[19] Kosiorek does not

---

[16]     HRS § 26-4 states, in relevant part:

   **§ 26-4 Structure of government.** Under the supervision of the governor, all executive and administrative offices, departments, and instrumentalities of the state government and their respective functions, powers, and duties shall be allocated among and within the following principal departments that are hereby established:
   . . . .
   (5)   Department of commerce and consumer affairs (Section 26-9)[.]

[17]     HRS § 92F-3 states, in relevant part:

   **§ 92F-3 General definitions.** Unless the context otherwise requires, in this chapter:
   . . . .
   "Government record" means information maintained by an agency in written, auditory, visual, electronic, or other physical form.

[18]     HRS § 92F-11 states, in relevant part:

   **§ 92F-11 Affirmative agency disclosure responsibilities.** (a) All government records are open to public inspection unless access is restricted or closed by law.

[19]     Under HRE Rule 201, judicial notice may be taken of facts "either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose
(continued...)

argue on appeal that this court should not take judicial notice of the DCCA Record. As the request to take judicial notice of the DCCA Record was made to the Circuit Court and the DCCA Record is a public record, we conclude that it is appropriate for this court to take judicial notice of the DCCA Record for the purposes of this appeal.

The DCCA Record identifies Mattos as the President, Treasurer, and a director of the Corporation. Marjorie C. Mattos (**Marjorie**), Mattos's wife, is listed as the Vice-President, Secretary, and also a director. HRS § 415-95 provides that in the absence of a court-appointed trustee, "the last directors of the dissolved corporation shall be and act as trustees." (Emphasis added). The statute does not provide that a single director, for example a president, is to serve as the trustee of the dissolved corporation but, rather, the "last directors." This evidence conflicts with Mattos's deposition testimony in which he testified that he was the only director of the Corporation.

"In considering whether an issue of material fact exists, 'the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) . . . must be viewed in the light most favorable to the party opposing the motion.'" See, e.g., Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 91-92, 648

---

[19](...continued) accuracy cannot reasonably be questioned." HRE 201 also provides that "[a] court may take judicial notice, whether requested or not ... at any stage of the proceeding."

P.2d 689, 694 (1982) (citation omitted). If, as it appears from the DCCA Record, both Mattos and Marjorie were directors at the time of the Corporation's dissolution, they both became trustees upon dissolution, and presumably would have needed to act together to effectively convey Lot 6.[20] We conclude, therefore, that a genuine issue of material fact exists with respect to whether only Mattos was a director or, as suggested by the DCCA Record, both Mattos and Marjorie were directors at the time of dissolution.

For these reasons, we conclude that the Circuit Court erred in entering partial summary judgment in favor of Kosiorek.

B.    The Motion to Extend Time

Defendants argue the Circuit Court erred in denying their Motion to Extend Time by not permitting them to submit a declaration attaching and authenticating a Honolulu real property tax bill that Mankelow received in the mail after the oral hearing on the MPSJ but before the court decided the motion, in order to prove that Honolulu considered Mankelow to be "the owner of Lot 6, the real property in dispute." However, as this court has concluded that the Circuit Court erred in granting partial summary judgment in favor of Kosiorek, it is unnecessary to address whether the Circuit Court erred in entering its Order Denying Motion to Extend Time.

For these reasons, we vacate the Circuit Court's August 29, 2017 Amended Judgment and January 4, 2017 Order Granting

---

[20]    As the issue is not before us, we do not express an opinion as to whether it may have been possible to establish that one trustee was acting as an agent or on behalf of both trustees.

21

Partial Summary Judgment; this case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, October 7, 2019.

On the briefs:

Robert F. Miller,
    and
Randolph R. Slaton,
Jerrold K. Guben,
(O'Connor Playdon Guben &
 Inouye LLP),
for Defendants/Counterclaim
Plaintiffs-Appellants.

Gary G. Grimmer,
for Plaintiff/Counterclaim
Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge